Good morning, and may it please the Court, I'm James Loffa, and I represent the appellant. With the Court's permission, I'd like to reserve three minutes of my time for rebuttal. This appeal involves a sentencing in a child pornography case, and there are three offense-level issues. First, I'd like to talk about the seven-level adjustment for distributing child pornography to a minor to entice the minor to engage prohibited sexual conduct. This adjustment requires the involvement of a real minor, not just an adult pretending to be one. It wasn't recommended by either the probation office or the government, but the district court imposed it after it saw the chat logs submitted by the government for another purpose. Of course, once the court indicated its intent to do this, the government jumped on the bandwagon and advocated for the adjustment. The problem is that despite what it says, the government has never acted like it really believes that real minors were involved in these chat logs. If everything said in those chat logs are true, then the girls on the other end of the chats are being sexually abused in their own homes in a horrible, horrible way. And if the government even suspected that that was the case, it had the motive and the means to track those girls down through their Yahoo user accounts. But it apparently never even tried to do that. It certainly never presented the fruits of such an investigation to the district court. So there's really only two possible conclusions. Either it looked into this and determined that the chat participants were not actual minors, or, and this is more likely, it looked at the facially absurd chat logs and immediately realized that these aren't real kids. Either way, it's really unconscionable for the government to have encouraged the district court's unreasonable view of these logs. Although I made this argument in my opening brief, the government never even bothered to respond to it, so I'm hoping today we'll finally learn from the government counsel why it has never acted like these chats involved real minors. In any event, this case, this court has had a chance to look at the logs for itself, and it can see that the language used and the outrageous scenarios described by the purported minors are clearly the deranged fantasies of adult men and not truthful reporting from underage girls. The district court, therefore, erred when it took the face logs at face value and concluded that those logs, standing alone, were sufficient to prove by preponderance of the evidence that real girls were involved. That conclusion was a significant factor of sentencing. The court used it not only to impose this adjustment, but also to impose a high-end sentence. Counsel, let me just ask you this. The chat logs, in some instances, the individuals did self-identify as being minors. I think in one, at least in one situation, someone described an older brother of age 16, and in another someone said she was 12. And so there were some instances, at least, in which people self-identified. Why isn't that prima facie evidence that permits the district court to apply this enhancement, and then it would be up to you to show that these were false? I don't think that's the case, Your Honor, because I think whenever the court makes a determination based on a piece of evidence, the first thing it has to do is say how reliable is this evidence. In other words, how reliable are these statements that the so-called minor says I'm 12 or my older brother's 18? Well, given the fact that kids chat regularly from, you know, whatever, age 10 onward, probably younger than that, why shouldn't the court be able to take these statements as being prima facie true? I don't think it can do that without looking at all the statements. And the crux of my argument is when you look at all these things that these supposedly little girls said, it's just not plausible that they're little girls. And I think that when the court looks at this and when the district court looks at that, it also has to consider the government's silence. If these were really little girls, I mean, the court will probably be able to do that. But my point is that there's already, if there were zero entries that mentioned an age, I would have an easier time buying your argument. But when there are entries that say specifically this is my age, I'm not sure what more the court can require or has to require at that point. Well, maybe ask the government to go check the address. Go back. Or the defense counsel could ask. At a minimum, I think that's what this court should do. I think that it is incumbent upon you to check, though, and to come in and say, well, this is, you know, John Smith who works at, you know, the insurance company. And so it can't be a 12-year-old girl. Well, Your Honor, first of all, I would point out, as the court knows, it would be much more difficult for us to do that. We don't have the subpoena power that the government and the FBI have. Did you ask for a subpoena for that? No, we didn't. And I think that the problem is, and there's a reason why the government didn't ask for this enhancement in the first place. And there's a reason why the probation office, which at least from the central district of California, is not in the habit of being very generous in doing guidelines calculations in child pornography cases. They looked at the chat logs. They didn't recommend this enhancement. Because if you look at these for what they really are, you get a gut check saying, these aren't real kids. These are disgusting men on the other end of the spectrum. And so if the district court has a different gut check that some of these are genuinely minors, the fact that it wasn't recommended doesn't preclude the court from doing it. Not at all, Your Honor. But I again come back to the fact that the court can't look solely at one line in a chat log saying, I'm 13, without reading further down to the disgusting and totally improbable, unrealistic things that this 13-year-old girl is supposedly saying and say, you know what, she's probably not 13. She's certainly not doing these other things. It's not realistic to assume that. So I can't really believe what she says further up when she says what her age is. I think that the crux of my argument is all the court had were these chat logs. And these chat logs aren't reliable enough standing alone to meet the preponderance of the evidence standard. In particular, when I think the court should have taken into account the silence of the government, who had the motive and the means to find out whether these kids were being abused. And I think that as a court can see from the kind of disgusting things that are described in the logs, in particular there was an instance where a teenage girl says that her and her boyfriend are molesting her little five-year-old sister on a regular basis. You know, but the problem with your saying that that's too disgusting to be true is that we, you know, all of us unfortunately have actually seen cases just exactly like that that have been prosecuted, where mothers and teenage daughters abuse, you know, five, ten-year-old girls and boys. I mean, horrible things. And they do actually happen. So they're inherently awful, but they're not inherently improbable. They are highly, highly improbable to the point where if there were any indicia of substantive reliability, an FBI agent or the prosecutor would have taken actions to protect these so-called children. Let me ask, assuming you're right, it's still a question of reasonableness of the sentence here, right? We didn't raise an issue other than the guidelines calculations. I know, but okay. I guess. You're not challenging the substantive reasonableness as a separate item? No. Next I'd like to talk about the four-level sadistic images enhancement. I'm sorry. I didn't hear what you said. Next I'd like to talk about the four-level sadistic images enhancement, unless the court has further questions on the other enhancement. I understand the court has had the opportunity to view the three images the district court found to be sadistic. The photos called new image two and new image three are clearly not sadistic because there's no penetration and no other indicia of sadism or pain, which leaves new image number four. As the government acknowledged in this Rule 28J letter, it has now determined that this image was not one of the 16 images distributed as part of the count of conviction. This is significant for two reasons. First, the court can't uphold the sadistic image adjustment based on this image alone unless it also concludes that the appellant's possession of undistributed images counts as relevant conduct, and I'll get to that argument in a minute. Second, because the guilty plea does not establish that new image four is child pornography, the court will need to determine whether the government has proved that the female in the image is actually less than 18 as opposed to a young-looking 18-year-old. With this in mind, I'd like to look at the image. If the woman in the or the female in the image is a minor, she's clearly post-pubescent, and it's impossible to tell from the photo whether there's any actual penetration going on, so the district court erred when it simply assumed that it was, even though it couldn't see whether there was. But even if the district court could make that assumption, it conceded that there was no way to tell whether it was vaginal or anal intercourse. And this is important because neither this court nor apparently any other has held that vaginal intercourse with a post-pubescent female is inherently sadistic. The government says that it is if the girl is a minor because she's being placed in a degrading and humiliating position as being used as a sex object by an adult. But under the government's extremely broad definition of sadistic, almost all child pornography would be covered by the sadistic image's adjustment. The Sentencing Commission couldn't have intended such a result if it wanted to make the kind of adjustment that the government advocates for. It could have done so using clear and simple language. And it's improper to try to reach the same result by twisting the word sadistic far beyond its normal meaning. And, of course, the rule of lenity requires the court to give the appellant the benefit of any doubt in the interpretation. Therefore, the court should find that the images submitted by the government don't qualify as sadistic for purposes of the four-level adjustment. Turning now to the last defense-level issue, which is whether the appellant's possession of undistributed images counts as relevant conduct. As I've explained in the reply, I mistakenly thought that the district court had counted possessed images in imposing the number of images adjustment, and I really apologize again for that error. Still, if the court determines that only new image number four qualifies as sadistic, then it must reach the relevant conduct issue because the government now concedes in its Rule 28J letter that the image was possessed but not distributed. And if the court vacates the custodial portion of the appellant's sentence based on either of the other challenges to the offense level, it should reach the relevant conduct issue because it's likely to arise again at resentencing. The district court only has indicated that it believes it can count possessed images but chose only not to do so because the range was bumping up against the stat max anyway. So if it goes back and the guideline range is lower, there's a very good chance that the court will use that. So the court should offer some advice on that. Guideline 1B1.3a defines relevant conduct. Subsection A1 covers only acts that occurred during the commission of the offense of conviction. And this court held in the United States v. Williamson that images merely possessed by a defendant convicted of shipping child pornography don't count as relevant conduct under subsection A1. Therefore, the government concedes that the appellant's possession of the images other than the 16 actually distributed don't count as relevant conduct under section A1. It claims, however, that it does count as relevant conduct under subsection A2, which applies if the possession is part of the same course of conduct or a common scheme or plan as a distribution. The problem is that all of the cases on which it relies, namely the Seventh Circuit decision in the United States v. Ellison and other cases citing Ellison, are based on subsection A1, not subsection A2. So not only do those cases fail to support the government's argument, they are also in direct conflict with this court's decision in Williamson. The only case that does apply to subsection A2 to similar circumstances is the Fifth Circuit's decision in the United States v. Fowler where the court held that the guidelines shouldn't be construed so broadly as to make the possession of any child pornography part of the offense of the transportation of child pornography. Fowler is consistent with the position taken by the probation office in this case, a position it came to after consulting with the tribe for the sentencing commission. The probation office properly concluded that the evidence does not support the government's contention that the entirety or even a discrete portion of the possessed images was supposed to be distributed to others. Therefore, if the court vacates the custodial portion of the sentence, it should instruct the district court that it should not count possessed but not distributed images in calculating the offense level. I see that I am running short on time. Can I reserve the rest of the time? Thank you very much. I'll go for Mr. Stacey. I'm going to please the Court, Robert Stacey for the United States. I'll begin where defense counsel did with the seven-level enhancement and point out a fact that I'm not sure if the Court identified or not. But at sentencing, defendant himself never contested that the recipients of these images were minors. The only argument that defendant raised at sentencing was whether or not defendant in the chat logs was trying to entice the minors. Do you believe that they were minors? I did, Your Honor. Did you follow up to protect them? Did the government follow up, the FBI? I don't know whether the FBI followed up, no, Your Honor. Did you ask them to? I did not, Your Honor. And you really never pushed this issue? Well, Your Honor, push what in terms of what? In terms of the letters the government writes, you know, defending or objecting to the PSR that it didn't include. It was only after the judge picked it up that you went in, as I understand it, maybe I'm wrong, that you picked up the argument. And that's correct. I admit the district judge found the issue in the chat logs. As defense counsel stated, I submitted the chat logs for another purpose. I hadn't read them the same way the district court judge did, but after she did, I reread them and realized there was a very real argument there for the seven-level enhancement. Well, maybe I have different experience. Usually the government believes that they do something about it. I don't think it really believes it. I hate to say, I sort of agree with defense counsel. That, you know, we don't know whether these were FBI agents, but more likely this is just what goes on in these chat logs. And it seems to me that if you really believed it, one would have taken some steps to protect and tell the family what their kids are doing. Well, and I think defense counsel also overstates what's going on in the chat logs. In many of the cases, it's defendant attempting to incite the children to commit these activities, but the children are not doing them. Defense cites the chat logs as having all these children being abused. But in this one, is there any evidence of that? Pardon me, Your Honor? In this chat log, is there any evidence of what you just said? Which chat log are you referring to, Your Honor? In this case. Oh, but there are five separate — there were five separate girls the defendant talked to in the chat logs. I was trying to get at which one you were referring to. I don't hear any of them. And, I'm sorry, Your Honor, your question was? That he's trying to entice them in the way you're talking. Yes. In one of the chat logs, the girl talks about possibly seducing her father, and the defendant advises the girl on how to do that. That is in — I cited it in my brief at Page. I'm sorry, I can — I don't want to waste any more of the Court's time. I can bring the citation to Your Honors. But in at least one of the chat logs, the — again, the defendant attempts to advise the girl on how to seduce her own father. In another of the chat logs, the defendant attempts to encourage the girl to be naked with her young friends. But there's no evidence — there's no evidence that the children actually did that. And, again, as to whether or not the victims were minors, the government didn't do any follow-up on that because the defendant never contested the issue. That's not the point. My point is that you really believe that you should have done something about it. And, therefore, you know, I find it pretty hard to believe how the district court could make this finding a preponderance of the evidence. Well, and on that — You don't seem to be pushing it. Well, and on that note — Look, I get these cases, and normally the government really believes that they do something to prove it, that this was more than just pure downloading. Well, and I think there was additional proof here, Your Honor, in the chat logs. As Judge Graber pointed out, I believe the fact that the girls self-identified themselves as prepubescent, I think the district court is allowed to rely on that in and of itself. But there's more evidence from the chat logs themselves that the girls were underage. The girls described their home life, their families, their friends in very childlike terms. There are entries in the chat logs that indicate that the girls sent pictures of themselves to the defendant. The defendant commented on looking at the pictures of these girls. Presumably, if these girls were not prepubescent adults, the defendant would have gotten pictures, I guess, of a disgusting old man, as the defendant puts it, and rejected it. The defendant gave one of the girls — this is at ER 383. I don't think that somebody might have sent it hoping to get something good, in quotes, in return. It's certainly possible, Your Honor. But the defendant himself gave advice on how to distinguish adults from children. This is at ER 383. He attempted to advise one of the girls. If the defendant is an expert, as he claims, presumably the defendant is good at determining which are the adults and which are the children. As it was brought out in the PSR, the defendant participated in as many as 65 to 70 of these chat groups. He had considerable experience. And even — I think you also need to consider the issue of probability. Again, the defendant participated in 65 to 70 of these chat groups. Of the chat logs, the only ones the government was able to recover were the text files the defendant himself had saved on his computer. We don't know how many other people he talked to, but just those chat logs represent five separate girls. I've abbreviated them as A, B, C, R, and M. Now, what are the odds that all five of those were adults? Even if you assume, and I think this is a broad assumption, let's assume that half, fully half of the participants in these chats are adults pretending to be children. The odds that all five of those children, that none of those children was a real child, would be the same odds of taking a coin, flipping it, and having it come up heads five straight times. I guess I have a different experience. I could see five old men chained, you know, looking for something. Well, I'm not saying that there may not be five old men. My point, Your Honor, is that what are the odds the defendant found the five old men and none of the real children? I submit to you, Your Honor, that the odds are very low. What would the guidelines have been if the seven weren't included? Not offhand, Your Honor, but that also raises an interesting if question. The district court indicated that she was inclined to impose the five-level enhancement for the number of images. So if the seven-level wouldn't have applied, query whether she would have applied the five-level enhancement. So it could have been seven levels lower. It could have been two. In addition, I'll move on. Unless the court has any additional questions on that issue, the government will move on to the point of the sadistic images. Defendant overlooks images two and three in this case. Defendant has skipped right to image four, the one the defendant possessed but didn't distribute. Now, images two and three, the district court made specific findings regarding the sadistic nature of that image. The girl was being – this is at ER 48-52. The girl was being restrained. She was arched back into an unnatural position. She had a blank expression on her face. And there was a foreign object the size of an adult penis being thrust towards her genitalia, which at least in one of the images, this is at ER 47, the district court actually found to be penetrating the girl's genitalia. Now, I would refer the court to the Eighth Circuit's decision in Bellflower, one of the cases cited in my brief. In that case, the Eighth Circuit held that attempted penetration was per se sadistic. The government doesn't believe that the court should go so far in this case. The government believes the proper approach, which is what the district court employed, is to take a fact-by-fact analysis and determine that the images in this case were in fact sadistic. In the Reardon case, this court held that application of the sadistic images enhancement is reviewed for abuse of discretion. In this case, given the pictures, the district court's finding, I don't believe it was an abuse of the district court's discretion to find that those images were sadistic. I'll finally turn to the expanded relevant conduct issue. Again, the guidelines set forth, if you will, sort of three levels of conduct. There's the offense conduct itself. Then there's relevant conduct, which includes not only the offense conduct, but all actions taken by the defendant during the commission of the offense. Then there's expanded relevant conduct, all actions taking place in the same course of conduct or same common scheme or plan. Now, in this case, defendant states that Williamson held that per se in child pornography cases, relevant conduct, the first level of relevant conduct only includes the offense conduct itself. I think if you read Williamson closely, you don't reach that conclusion. The Williamson court decided without really discussing that in that case, it could only consider the images the defendant distributed. It did not discuss whether or not it couldn't reach the other images because they weren't possessed during the offensive conviction or if there was some other factual differentiation. I'm not even sure if the parties briefed the issue. Even, in fact, if the Williamson court had decided that those images would not be proper relevant conduct, I think that decision would be at odds with this panel, with this Court's earlier decision in U.S. v. Johnson. That's a case that was cited in my briefs before the district court. It's 187, Fed 3rd, 1129. The troublesome aspect of this case, the statutory maximum was what, 240? 20 years. Correct, Your Honor. The judge hadn't made these findings. Couldn't she? Virginia Phillips. I am sorry. Yeah. Forget it. I know the cases all run together. Couldn't she have come to the same sentence just because of his admission of his past molestation of his sister and his niece? And that would have been a much more straightforward and honest result here. Oh, certainly, Your Honor. I believe that under Booker and the 3553 factors, yes. I mean, even without making these findings, the district court could have easily sentenced the defendant up to the statutory maximum. Here you have a defendant who molested girls multiple times, and then when I tell you, I would have felt a lot more comfortable about what went on here if the judge had done that straight out. Because to be blunt about it, I can't believe a judge, if there had been no molestation of the sister and the niece would have gone to this extent to, you know, start piling it on. They would have accepted the 70 to 87 months, which was the original guideline I think that the PSR came up with. You know? Okay. And I guess I feel, Your Honor, again, I'm second-guessing. I really can't put myself in Judge Phillips' shoes, but I guess she felt, one, that these guideline factors were present, and second, she felt the need to make a solid record. In fact, we, as in the last case, there were actually two sentencing hearings. There was the first sentencing hearing in which she announced that she believed the seven-level enhancement was applicable, gave the parties a week to submit additional briefing. Then we had the second sentencing hearing after that. So I don't think this is a case in which the district court was lax in any way in its procedure or in how it went about imposing the sentence. Well, if there's a corner cut, it was at the end where she seemed to say, I'm ready to go to the max, but that would require giving notice and having still another hearing. Otherwise, she was pretty diligent at it. I believe so, Your Honor. And in that case, in that, I see there's some additional time remaining. If the Court has no additional questions, I'll rest now. Just to be clear, with regard to the supervised release conditions, given the current state of the law, what is your understanding as to what should be done with them? With the exception of the condition to which the government conceded in its brief, I believe the other supervised release conditions are fine. As I understand it, as I read defendant's brief, defendant is essentially addressing conditions that this Court has already approved in Stotterau, in Reardon, in B, and in other cases. But defendant is attempting to sort of breathe new life into those arguments by saying, well, in Stotterau it was a three-year supervised release term, so it's appropriate there, but it's not appropriate here because of the term for life. Interestingly enough, defendant does not contest the imposition of a lifetime term of supervised release on its own. There's evidently no problem with a lifetime term of supervised release, and I think the facts here over a 30-year history of pedophilia, multiple incidents, multiple images, I think the facts here certainly support the imposition of a lifetime period of supervised release. So the question is, is the fact that these conditions might be onerous sometime in the future, does that make them unreasonable now? And I think the answer is no. Again, if a lifetime term of supervision is appropriate and these conditions are appropriate now, I see no reason why they couldn't be imposed for the entire term of supervised release. And defendant's emphasis that he will have to endure these conditions for life is not necessarily so either in that 20 years from now, 30 years from now. If he's indeed rehabilitated, if he indeed brings evidence, he can certainly come to the district court, make a motion to have his supervised release modified and have some or all of these conditions taken away. Let me cut to the bottom line here. As I went through my notes, I realized my notes weren't clear enough for me to figure out what I meant now. And so now I'm trying to make sure I understand that the government acknowledges that the reference to computer access to, quote, pornography and also the forced medication provision within Condition 5 wouldn't be sustained by the binding case law. That's correct, Your Honor. So those you're not contesting any further. The others you say are still justified under our case law. That's correct, Your Honor. Those are the two. Okay. And I see my time is up. If there are no further questions, I'll wait. I think there are no further questions. Thank you. Thank you, Your Honor. And you have some time remaining, sir. Thank you. First, to address Judge Trager's question, the guideline range, if the sadistic image enhancement applied but the distribution of a minor, the distribution was a plus 2 instead of a plus 7, would be level 31, which is 108 to 135 months. Let me ask you the question I asked the government just to be fair about this. If you want on everything, okay, and she had just simply said, accepted the PSR, but nevertheless said because of this history of actual misconduct, I'm giving 235 months, would that have been an unreasonable sentence? I think that's something to be battled out on a remand, because the court initially, even after, you know, being made aware of his prior history of abusing his sister and niece, was originally inclined to give a 13-year sentence. So that in and of itself didn't make the judge go up. The other thing I'd like to point out, and I'd like to point to footnote 1. Wait a minute, wait a minute. I have difficulty with that. You have not challenged the reasonableness of the number of months as a separate argument. You have not said, as I read your materials, the 235 months just standing all by itself is too much. Am I correct or incorrect in that? Well, I'm sort of asking. I'm correct, but that's not the issue now. No, I know that. That's what I'm saying. You have not said that 235 is too much, and yet you're saying, well, we'd like to deal with that on remand. But this was, you didn't preserve that as a separate argument. Well, I strongly disagree, Your Honor. I think that it is not incumbent upon me to say that this is per se unreasonable to make it clear that I think that the court has to properly calculate the guidelines so it has that when it does the sentence. We see cases, you know, all the time in which the arguments are made, as lawyers always do, in the alternative. We think the calculation was incorrect, but even if it was correct, this is an outrageous sentence, it's too long, and so forth, which is a separate substantive argument. Under the Supreme Court's jurisprudence, for better or for worse, there are two categories. There's procedural reasonableness, and then there's substantive reasonableness. And this is a procedural case, which says to me that you're not challenging the 235. But I don't think that's necessary, because, Your Honor, unless I'm misunderstanding the argument, is Your Honor saying that if this is reasonable, even if the guidelines are improperly calculated, it doesn't need to remand it? No. I guess I'm saying I'm not sure what you gain from it, I guess, is what I'm saying. Well, I think what we gain from it is once the district court understands what the true guidelines are and what the true facts are in light of the government's concession, it may look at the facts differently. And I'd like to point to the court to the reverse. You're saying maybe the court would have done something actually different. So the court might have said, okay, well, if it's only a level 31 or it's only a level 36 or whatever, if she added the 5 in, then I guess I'm not going to give him as much. But if she actually gave him the 235, I'm not sure it would be open to you to challenge that. Your Honor, I think if that happens, we could appeal again. And I disagree with that, because I think that until the court says there's a lower guideline range, but I'm considering these 3553A factors and these are my justification for giving a higher sentence, I've got nothing to challenge. Okay. I understand what you're saying. If I could say one more thing. I would like to point, though, to footnote 100 in my opening brief. You will see that this fact about the chats with the so-called children was a very, very significant fact to the court. There are numerous statements in there. It bothered her a lot. And it was not just to enhance, make this enhancement, but to also give the high end. That's what really made her angry. And I think if she learned now what the government's saying is that I didn't even think this was serious enough, have the FBI look into it, she might have a very different view of this case. Thank you very much. Thank you, counsel. The case just argued is submitted. We appreciate the work of both parties on this case. And we will stand adjourned for this session.
judges: Graber, Clifton, Trager